# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| PAUL A. IANNELLO, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) No. 3:16-cv-01867 |
| | ) Chief Judge Crenshaw |
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | ) ) ) |
|     Defendant. | ) ) |

## MEMORANDUM OPINION

This is an action for recision and breach of contract brought by Paul A. Iannello ("Iannello") against American General Life Insurance Company ("American General"). American General has filed a Motion for Summary Judgment (Doc. No. 33), that motion has been fully briefed by the parties (Doc. Nos. 33-7, 37-4 & 39). Summary judgment will be denied.

## I.

American General's Motion for Summary Judgment is based upon the following undisputed facts[1]:

1. For more than two decades, Iannello has owned and/or operated several businesses, most recently serving as the Chief Executive Officer of Torq-Comm., Inc. He has entered into several contracts on behalf of his companies, and understands that agreements govern the terms of a relationship between two parties.

2. Over the years, Iannello has invested in businesses, mutual funds, and the stock market. He also sold term life insurance for two years early in his career.

3. An application was submitted by Iannello on January 23, 2015 for a life insurance policy issued by American General. The initial premium was listed $250,000, and

---

[1] The following facts are drawn primarily from American General's Statement of Material Facts and Iannello's responses thereto. (Doc. No. 37-1). Specific quotations from documents referenced in the filings are cited separately as indicated in the body of the factual recitation that follows.

Iannello paid that amount.

4. Immediately above the signature line, the application form provided:

> I agree that no agent of the Company [American General] . . . . has authority to waive any answer or otherwise modify this application or bind the Company in any way by making any promise or representation which is not set out in writing in this application.

(Doc. No. 33-2 at 68).

5. Iannello received policy illustrations from American General. Iannello signed one policy illustration dated April 13, 2015, and his "bitmap" signature (which he agrees has the same effect as an actual signature) appears on a policy illustration dated March 10, 2015. Both provided:

> BY SIGNING THIS FORM, YOU ACKNOWLEDGE THAT YOU HAVE READ (OR HAVE HAD READ TO YOU), UNDERSTAND, AND AGREE TO THE FOLLOWING STATEMENTS:
>
> 1. Life Insurance is not an investment. I am purchasing an Indexed Universal Life Insurance Policy because I have a long term need for permanent life insurance.

(Doc. No. 33-3 at 40).

6. The April 13, 2015 policy illustration indicates that, at the end of the first year, the cash surrender value of the policy would be $135,884, and Iannello admits that, had he reviewed the illustration, he would have realized that this was the cash surrender value.

7. Iannello received a policy issued May 20, 2015 from American General. The first page of the policy states that it is an "Individual Fixed Index Interest Flexible Premium Adjustable Life Insurance Policy." That page also provides the following "NOTICE OF RIGHT TO EXAMINE POLICY":

> You may return this Policy within twenty days after delivery if You are not satisfied with it for any reason. This Policy may be returned to Us or the agent through whom it was purchased. Upon surrender of this Policy within the twenty day period, it will be void from the beginning, and We will refund any premium paid.

(Doc. No. 33-2 at 2).

8. Iannello concedes that he could have reviewed the policy, that if he did not like the terms of the policy he could have returned it, and that the cash surrender value of the policy would be less than the $250,000 he paid.

9. Iannello decided to surrender the policy to American General, albeit long after the grace period for return. American General, in turn, paid him $138,887.81 as a result of the surrender of the policy.

## II.

As noted at the outset, Iannello seeks recision of his contract with American General. "Rescission, of course, involves the avoidance, or setting aside, of a transaction," Mills v. Brown, 568 S.W.2d 100, 102 (Tenn. 1978), and "fraudulent misrepresentation can be a ground for the rescission of a contract," Green v. YMCA of Memphis, 2015 WL 6736705, at *4 (Tenn. Ct. App. Nov. 4, 2015) (citation omitted). To warrant recision of the contract, "the alleged misrepresentation: (1) must have been a representation as to an existing fact; (2) must have been false; (3) must have been relied upon; and (4) must have been so material that it determined the conduct of the parties seeking relief." Atkins v. Kirkpatrick, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991) (citing, Dozier v. Hawthorne Development Co., 262 S.W.2d 705, 709 (Tenn. Ct. App. 1953)).

As also noted, Iannello alleges that American General breached its contract with him. To prove this claim, Iannello "must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." Fed. Ins. Co. v. Winters, 354 S.W.3d 287, 291 (Tenn. 2011) (citing ARC LifeMed, Inc. v. AMC–Tenn., Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)).

The undisputed facts on which American General relies certainly support its Motion for Summary Judgment. The problem, however, is that those are not the only facts in the record. Moreover, American General misconstrues the nature of Iannello's claim.

3

While Iannello agrees that he sought and received a life insurance policy, he claims that was not the bargain he struck with American General or its agent. Rather, the issuance of a life insurance policy allegedly was a bonus, and only a small part of the overall deal. These contentions are based upon the following facts:

> 1. After the sale of the intellectual property of a business partly owned by him, Iannello sought to invest for his retirement. Towards that end, and at the suggestion of a colleague, Iannello contacted Shannon Insurance Group, Inc. ("Shannon"), an agent of American General.
>
> 2. Iannello was told by the colleague that Shannon could provide a high-yielding, annuity style "investment product," and Iannello told Shannon about his desire for such a product when they met. Shannon agreed to provide Iannello with a high-yielding "investment product" that would give him tax-free income with a guaranteed three percent rate of return. Shannon also told Iannello that he would periodically receive account statements showing the growth of his investment, and that he could cancel the investment at any time without penalty.
>
> 3. Shannon also told Iannello that the "investment product" also included life insurance. While Iannello told Shannon that he did not need additional life insurance, he agreed to purchase such insurance because he believed that the insurance was an additional benefit associated with the "investment product," and that he could not get the "investment product" without it. Accordingly, Iannello cooperated in the submission of a life insurance application, and signed the same.
>
> 4. Iannello paid American General $250,000 for the "investment product" that had been discussed with Shannon. Thereafter, Iannello received in the mail a notebook containing what he thought was his agreed-upon "investment product," but, in fact, was a life insurance policy. Over the next several months, Iannello reached out to both Shannon and American General seeking an explanation and answers regarding his investment account.
>
> 5. Even though Iannello understood that the "investment product" had a life insurance component, he did not agree that there would be "any intrusion whatever upon the corpus of [his] investment. In fact, he was told that if he ever felt unable to continue to contribute to his investment, he could simply and cancel it and have his money refunded." Thus, he was "startled to determine" that his "original $250,000 investment had a cash value of only approximately three-fifths that amount."

(Doc. No. 38, Iannello Affidavit ¶¶ 3-13; Doc. No. 37-1, Iannello Statement of Facts ¶¶ 2-5).

**III.**

Under the Federal Rules of Civil Procedure, summary judgment should be granted only if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute of material fact is genuine so long as 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Tyson v. Sterling Rental, Inc., 836 F.3d 571, 576 (6th Cir. 2016); (quoting Ford v. Gen. Motors Corp., 305 F.3d 545, 551 (6th Cir. 2002)). In determining whether there is a genuine dispute of material fact, the evidence and the inferences to be drawn therefrom are construed in favor of the non-movant. Siding & Insulation Co. v. Alco Vending, Inc., 822 F.3d 886, 891 (6th Cir. 2016); Cass v. City of Dayton, 770 F.3d 368, 373 (6th Cir. 2014).

Applying the appropriate standard, there are a bevy of disputed facts precluding summary judgment. Chief among them is whether Iannello agreed to simply pay for, and receive, a life insurance policy, or whether the agreement he reached with American General (or its agent) was that he would receive an investment product guaranteeing a yearly return and the right to cancel without penalty in exchange for the payment of $250,000, coupled with a life insurance policy perk. This dispute alone raises jury questions regarding the recision claim. Specifically, whether Shannon, as an agent of American General, made false representations about what Iannello was getting into, and whether those representation were such that he decided to go ahead with the "investment product," not knowing that he was being duped. It also raises a jury question about the breach of contract claim, specifically whether the policy he received, weeks after he made the $250,000 payment, was the actual agreement contemplated by the parties.

In arriving at the conclusion that the jury will have to sort out the facts, the Court has

considered American General's response to Iannello's arguments and the affidavit he submitted in support thereof. The Court is unpersuaded by American General's arguments seeking judgment as a matter of law.

American General first argues that, even though Iannello did not receive the actual policy until after money had exchanged hands, Iannello knew exactly what he was getting into because he was provided with policy illustrations. This argument, however, ignores that (1) Iannello claims not to have seen some of the illustrations, and (2) those that he did receive were presented during meetings with Shannon where he was also presented with charts and other data showing what the return on his investment would look like. It also ignores that Iannello never claimed that he was not going to receive a life insurance policy, only that the policy was a mere byproduct of the purchase of the "investment product." Thus, reliance on a case like <u>Cirzoveto v. AIG Annuity Ins. Co.</u>, 625 F. Supp. 2d 623, 629 (W.D. Tenn. 2009), for the proposition that it is not reasonable or justifiable to rely on "oral misrepresentations that squarely contradict the terms" of a contract is misplaced when there is a disagreement as to what exactly constituted the agreement between the parties. Also misplaced is reliance on cases like <u>Moore v. Progressive Sav. Bank</u>, 2000 WL 420675, at *4 (6th Cir. April 10, 2000), for the proposition that "one having the ability and opportunity to inform himself of the contents of a writing before he executes it will not be allowed to avoid it by showing that he was ignorant of its contents or that he failed to read it" where the party is not contemporaneously provided the contract.

American General also argues that Iannello conceded in his deposition that the entire agreement between the parties was the insurance policy. It relies upon the following exchange between Iannello and defense counsel:

> Q. [D]o you understand this document to represent the entire agreement you had with American General?
>
> A. Yes, sir.

(Doc. No. 37-2, Iannello Depo. at 151). American General also relies on the following exchange between Iannello and his own counsel:

> Q. . . . You were asked whether that was your entire agreement with American General, and you said, yes. I just wanted to clarify whether you think you have any other agreement with American General other than what may be contained in that policy -- that life insurance policy? Or what did you mean by that?
>
> A. That's the only thing that I have that represents the plan that I purchased that's my agreement.

(Id.. at 186-87). However, the last exchange was immediately followed with the following clarification:

> Q. Does it reflect --
>
> A. It doesn't reflect what I wanted, which is what spunned [sic] all of my questions.
>
> Q. I guess I'm going to focus on the word "agreement" then. Did you agree that everything in that document is what you were purchasing?
>
> A. No, sir. That, I can tell you, no.

(Id. at 187). Thus, it remains an open question whether the insurance policy was, in fact, the entire agreement between the parties.

Next, American General argues that Iannello cannot show that Shannon was its agent and that "the only evidence before the Court actually demonstrates that [Shannon] did not have this authority." (Doc. No. 39 at 6). This argument is premised on the policy application language that nobody had the "authority . . . to bind [American General] in any way by making any promise or representation which is not set out in writing in this application." (Id. at 7). Again, however, this

presupposes that *the* agreement between the parties was confined to the insurance policy, something the parties dispute.

As for proof that Shannon was American General's agent, Iannello testified in his deposition that he was told by Tammy Shannon that "she represented this corporation [American General] that could provide me this kind of tax-free income for my retirement," and that "she represented them and she sold their product." (Doc. No. 37-2, Iannello Depo. at 60-61). Her statements to Iannello would be hearsay, except for the fact that they allegedly were "made by a person whom the party authorized to make a statement on the subject," or were "made by the party's agent . . . on a matter within the scope of that relationship while it existed[.]" Fed. R. Evid. 801(d) (2)(A) & (C).

Finally, American General argues that the Court should disregard Iannello's "self serving affidavit" because it contradicts his deposition testimony. (Doc. No. 39 at 9). As an example, it point out that, in his affidavit Iannello stated that he had no desire to buy a life insurance policy, but he answered "yes" in his deposition to the question "that's what you represented to American General, that you wanted to buy life insurance?" (Doc. No. 37-2, Iannello Depo. at 183).

Affidavits by their very nature tend to be self-serving. "[I]ndeed, it would be odd for a party to submit an affidavit that was not self-serving in the sense that it provides support for [their] claim." Barahona–Carona v. Holder, 417 F. App'x 397, 399, n.1 (5th Cir. 2011); see United States v. Shumway, 199 F.3d 1093, 1103 (9th Cir. 1999) (observing that the "affidavit was of course 'self-serving,' ... otherwise there would be not point in submitting it"). Regardless, affidavits can be considered unless they directly contradict prior deposition testimony, Aerel, S.R.L. v. PCC Airfoils, L.L.C., 448 F.3d 899, 908 (6th Cir. 2006), or (under the "sham affidavit doctrine") are injected into the proceedings merely to avoid summary judgment, France v. Lucas, 836 F.3d 612,

8

622 (6th Cir. 2016).

Here, Iannello did in fact testify that he made certain representations by submitting the application, but during that same colloquy he also testified that what he wanted was an "investment product," and the life insurance policy was an "added benefit" or "add-on benefit." ((Doc. No. 37-2, Iannello Depo., at 181-183). This appears to have been Iannello's position throughout this litigation, and he repeatedly made this position clear during his deposition.

**V.**

When all is said and done, the record presents a jury question on the issue of whether Iannello receive exactly what he wanted and then got buyer's remorse, or whether he was the victim of a shell game orchestrated by Shannon as an agent of American General. Accordingly, American General's Motion for Summary Judgment will be denied.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE